ANDERSON, J.,
delivered 'the opinion of the court.
This is an action of slander at common law, and not under the statute, and must therefore be governed by common law rules. It lies for words which are actionable in themselves, or for those which, though not actionable in themselves, have caused some actual consequential damage, which must be alleged and proved. Words of the first description must impute guilt of some offence, for which the plaintiff, if guilty, might be indicted in the temporal courts, and punished as for an infamous crime, at least punishable with imprisonment. 2 Chit. Black., book iii, c. 8, top p. 95, side 123, note 14, and cases cited.
The words themselves may not import an imputation of crime, but spoken with reference to pre-existing or extrinsic facts, as shown by the conversation or discourse of the defendant, at the time the words were spoken, do impute crime. But to be actionable, they must be shown by the averment of the extrinsic facts, and by the colloquium referring to them to impute crime, or some high misdemeanor punishable ignominiously by the temporal courts.
In Holt v. Scholefield, 6 T. R. 691, Lord C. J. Kennyon said, “Either the words themselves must be such as can only be understood in a criminal sense, or it *must be shown by a colloquium in the introductory part that they have that meaning, otherwise they are not actionable.” The words must contain an express imputation of some crime liable to punishment, some capital offence, or other infamous crime or misdemeanor. Onslow v. Horne, 3 Wils. R. 177. And it is necessary to set forth precisely the words spoken. It has been held by some that it is sufficient to set out the words in substance. But the weight of authority is contra. Mr. Robinson, in his valuable work, says the rule is now well established that the words themselves must be set out. 4 Rob. Prac., p. 688, citing Parsons v. Bellows, 6 Newh. R. 289; Haselton v. Weare, 8 Verm. R. 480. And it has been held, that the same strictness in setting out the words spoken is required in civil as in criminal proceedings, the action being ex delicto. Ibid, citing Cook v. Cox, 3 Maule and Sel. 110.
Bet us apply these principles to the case in hand. In the first four counts the words are laid without a colloquium. In the first count they are, “Dick Stinnett killed my beef.” Innuendo, “meaning thereby that the plaintiff had killed and carried off felo-niously a beef, which some person or persons had shortly before that killed and stolen from the field of the defendant. ’ ’ In the second count they are, “he (meaning the plaintiff) killed the beef,” “meaning that the plaintiff had clandestinely and feloni-ously killed and carried off a beef belonging to her the said Ann.”
The office of the innuendo is only to give the meaning of the words spoken. It cannot extend or enlarge the meaning of the words, or introduce new matter. Rex v. Howe, Cowp. R. 672; Moseley v. Moss, 6 Gratt. 534; Holt v. Scholefield, 6 T. R. 691; 4 Rob. Prac. 694-5. An innuendo cannot be given to words which they do not necessarily import, either of themselves “'independently of any other circumstances, or with necessary reference to some other circumstances occurring at the time of the accusation. 2 Chit. Bla., B. iii, c. 8, top p. 95, side 123, note 14, and cases cited. In Van Vechten v. Hopkins, 5 Johns. R. 211, 219, Van Ness, J. says, “An innuendo is explanatory of the subject matter, sufficiently expressed before, and it is explanatory of such matter only; for it cannot extend the sense of the words beyond their own meaning, unless something is put upon the record for it to explain. ’ ’ That can only be put upon the record by the averment and the colloquium.
It is clear that the words laid in these two counts do not of themselves import an accusation of felony. ‘ ‘He feloniously killed and carried away my beef, ’ ’ is not the necessary or natural import of the words, “He killed my beef.-” It is clear that these counts are fatally defective and demurrable. And the third and fourth are obnoxious to the same objection.
The fifth count sets out a colloquium in these words: “On the day and year aforesaid, in the county, &c., in a certain other discourse, which the said Ann, wife of the said Hansbrough, had with divers other persons, of and concerning the said Richard, and of and concerning a certain steer or beef, the property of said Ann, which had shortly theretofore been by some person or persons, to the plaintiff unknown, feloni-ously killed, taken and carried away from a field belonging to the said Ann, she, the said Ann, spoke and published, in the presence and hearing of said persons, these false, malicious, scandalous and defama tory words of and concerning the plaintiff: ‘Dick Stinnett killed my beef;’ innuendo, (meaning thereby that the plaintiff had feloniously killed the steer or beef aforesaid, belonging to the said Ann, in her field). ‘He “'killed the beef;’ innuendo, (meaning thereby that the plaintiff had feloniously killed the beef or steer aforesaid, belonging to the said Ann, in the field, and carried the same away).” The question is, do these innuendos give the necessary or natural meaning of the words laid, taken in connection with the extrinsic facts averred, and the colloquium? And does it appear upon the face of this count, clearly and unequivocally, that the defendant imputed to the plaintiff felony, by the words which she is alleged to have spoken? The words themselves not being actionable at common law, unless the averment of extrinsic facts, and the collo- | quium concerning them, show that the de *462 fendant, in speaking the words laid, imputed the crime of felony, they are not actionable, and consequently, the defendant was not bound to answer; and the demurrer should have been sustained.
To say that one “killed my beef,” without an allusion to any circumstances connected with the killing, could not be construed to be a charge of feloniously killing. And it may be that the beef had been feloniously killed and taken away a short time before the words were spoken, as is averred in this count, but if nothing was said about it at the time the words were spoken, or it be not averred that she had notice of the felonious killing and taking away, or that it was so reported in the community, and known to her when she spoke the words, it would by no means be a natural or necessary conclusion, that she meant to accuse the plaintiff of felony, by merely saying “he killed the beef,” or “my beef. ” It is averred that the beef' had been “feloniously killed and carried away,” but it is not averred that there was any colloquium about the felonious killing, or that the defendant knew that it had been felo-niously killed and taken away, or that it *was so reported in the community, and that she knew that it was so reported at the time of the speaking of the words laid in this count of the declaration.
If the accusation is not made by the words spoken, taken in connection with the colloquium and averments, it cannot be supplied by the innuendo. Tor it is a clear rule of law, that the innuendo cannot introduce a meaning broader than that which the words, taken in connection with the averments and the colloquium, will naturally bear. Nothing, says Lord Chief Justice BJHenborough, can be more clear than the rule laid down in the books, and which has been constantly adopted in practice, not only where the words spoken do not in themselves, naturally convey the meaning imputed by the innuendo, but also where they are ambiguous and equivocal, and require explanation by reference to some extrinsic matter to make them actionable, it must not only be predicated that such matter existed, but also that the words were spoken of and concerning that matter. Ha wires v. Hawkey, 8 Blast’s R. 427. In that case there was an averment that the defendant had put in his answer on oath, to a bill filed against him in the exchequer; and the words laid were, “I have no doubt you (meaning the plaintiff’s servant) will forswear yourself, as your master (the plaintiff) has done before you.” There was no colloquium that the words were spoken with reference to that answer. But there was an innuendo that the plaintiff had perjured himself in what he had sworn in the aforesaid answer. The chief justice said, “the prefatory allegation that the plaintiff had put in his answer on oath to a bill filed against him in ’ the exchequer is right, but whether the words were spoken with relation to that answer, does not appear, unless after verdict it must be taken that they were so *spoken.” After careful deliberation the court held, that the innuendo could not supply the want of a colloquium, even after verdict, on a motion in arrest of judgment. And this is reasonable. The averments and colloquium, if material to impute criminality, must be proved. But the innuendo, being a mere explanation of antecedent words, need not be proved; and would tend to mislead the jury if it extends the meaning of the words further than they will naturally bear, even when read in connection with the averments, and the colloquium. Indeed, if the innuendo be allowed to enlarge the meaning of the words, a party may be held, legally responsible for words spoken, which by the law are not actionable, and for which he is not legally responsible.
In this case the defendant’s beef may have been killed by the plaintiff without any participation by him in taking and carrying it away. It might have been killed by him by accident, or it might have been shot by him by design as a trespasser, and others may have feloniously taken it away. The defendant may have had good reason to believe that he killed it, whilst she had no reason to believe that he killed it animo furandi. And she only .charged him with the killing. She never said that he took and carried it away, or that he feloniously killed it, so far as it appears from this declaration. Is it right to hold her responsible for words which she did not utter, or for imputing a crime to the plaintiff which the words spoken do not import? Surely not, unless it clearly appears from matter extrinsic averred, or from her discourse at the time, that the words spoken by her in that connection imputed to the plaintiff the crime. And that such imputation was made by the words spoken should clearly appear upon the record, otherwise, *the words spoken not being actionable in themselves, she is not bound to deny that she spoke them, or ,to justify. She is not bound to answer. The declaration is de-murrable, because it does not show a right of action in the plaintiff. It was rightly said by Baldwin, J. in Moseley v. Moss, supra, “When the ground of defamation is, that the words imputed to the plaintiff a criminal offence (the case here) it must be made to appear so, clearly and unequivocally, either by the words themselves, or, if they do not express that meaning clearly, by proper averments as to the subject-matter of the discourse.” “The meaning cannot be supplied by an innuendo. ’ ’
The sixth count is liable to all the objections mentioned to the fifth count. The words laid are, “We have no idea that Leighton killed the beef. Mr. Garland says that Stinnett (meaning the plaintiff) came out there in the field the day before waving a stick about, and he killed the beef.” The allegation in this count is, not that the defendant made any accusation against the plaintiff, but that she said, Mr. Garland says, &c. And the innuendo from these words is, an accusation by the defendant “that the plaintiff had been Seen waving *463 his walking- stick in the field, in which the beef was killed, the day before the killing occurred, and that the said plaintiff had feloniously killed, taken and carried away the said beef, the property of the said Ann.” The words laid in this count do not justify the inference.
The seventh count sets out the colloquium, and the averment as in the two preceding counts, and then adds, “she, the said Ann, in order to cause the said plaintiff to be falsely suspected of committing the said felonious killing and carrying away,” spoke, &c. The declaration must show, either by the words themselves, *or by extrinsic matter in reference to which they were spoken, that an offence was imputed by the defendant to the plaintiff, which would constitute slander at common law'. And' all the facts which are necessary, to show that the words are actionable, and to make out a case of grievance, for which the defendant is responsible to the plaintiff in an action at law, should be set out in the record, otherwise the defendant is not bound to answer. In Rex v. Horne, Chief Justice De Grey said, “In all cases those facts which are descriptive of the crime must be introduced on the record by aver-ments, in opposition to argument and inference. ” The objection to the clause in question is, that it is an inference; and that the facts put upon the record, by the averments and colloquium, do not justify it. If the facts averred, and the colloquium had justified the inference, the count would have been good.
After the evidence on both sides had been closed, the court allowed the plaintiff to amend his declaration by adding an eighth count. We are of opinion that the amendment was material to the merits, and therefore not allowable at that stage of the proceedings by the statute. Code of 1873, c. 173, p. 1119, sec. 7. But if it had been 'properly allowed, it is liable to the objections made to the fifth count.
It is proper to say that the declaration appears to have been skilfully drawn, and the defect seems to have been not in the pleader, but in the facts of the plaintiff’s case. But as it does not appear from the record that all the evidence has been certified, it may be a case for amendment upon the decision of the demurrer, and in conformity to precedents established by this court, the cause will have to be remanded, that *the plaintiff may have an opportunity to amend if he desires it.
Other errors have been assigned. We will notice only such as raises questions which may arise again upon another trial of the cause. As to evidence of the speaking of like words, antecedent or subsequent to the words laid in the declaration, it has been held that it is admissible upon the question of damages, but not until the words laid have been proved. Before that is done, it seems to be contrary, both to reason and authority, to admit such evidence, as it can be admitted only to affect the measure of damages.
The court can perceive no reason why a deposition, which has been read to the jury, may not be given to the jury in their retirement, if what is objectionable in it has been erased.
This court cannot review the ruling of the court of trial, upon the motion to set aside the verdict and grant a new trial, as the facts are not certified.
It does not appear from the record that the action was barred by the statute of limitations which was pleaded.
The only remaining assignment of error which we deem it necessary to notice, is that the words spoken were privileged communications, or were spoken under circumstances which rebut the imputation of malice. It is essential to all defamation, that it should be malicious. But it is an implication of law that all unauthorized defamation is malicious. There are, however, cases in which this inference of law does not arise, and where communications which would otherwise be defamatory, are justified by the occasion on which they are made. In such cases express proof of malice is necessary to render the communication defamatory. Such is the law with regard to conditionally x'privileged communications. Mr. Starkie describes them to comprehend all cases, where the author of the alleged grievance acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform.
But, it not being certified that the record contains all the evidence in this cause, it is not in the power of this court to decide whether the circumstances under which the words were spoken, in this case, rebuts the implication of malice.
The judgment of the court below must be reversed, with costs, and the verdict set aside; the demurrer to the declaration sustained, with leave to the plaintiff, if he desires it, to amend his declaration.
The judgment was as follows:
The courtis of opinion, for reasons stated in writing and filed with the record, that the judgment of the court below, overruling the demurrer to the original and amended declarations, is erroneous. It is therefore considered that the judgment of the Circuit court of Botetourt county be reversed and annulled, and that the defendant in error do pay to the plaintiffs in error their costs expended in the prosecution of their writ of error here; and that the cause be remanded, with instructions to the said Circuit court to give the plaintiff leave to withdraw his joinder in the demurrer, and to amend his declaration if he desires to do so, and if he does not wish for such leave, to give'judgment upon the demurrer. Which is ordered to be certified to the said Circuit court of Botetourt county.
Judgment reversed.